Mr. Justice. ÍTELSOÍT
 

 delivered tlie opinion of the court.
 

 This is an appeal from the Circuit Court of the United States for the northern district of New York, in admiralty.
 

 'The libel was filed by Reed, the respondent, against the steamboat Sultana, to recover for supplies furnished said boat.
 

 The claimants in the court below set up, by way of defence, a mortgage executed to them, by the master and owner, upon the Sultana, dated the 31st October, 1853, to secure the sum of five thousand three hundred and fifty-four dollars and ninety-eight cents. The mortgage was duly recorded in the office of the customs at Buffalo, the place of the enrollment of the vessel, and was also filed in the office of the clerk of the county of Erie. The demand claimed in the libel was a running account for the supply of coal at Erie, in the State of Pennsylvania, extending from June, 1852, to May, 1854. The claimants admitted, in their answer, the supply-set up in the libel, and also that it was represented to be necessary at the times delivered, to enable the vessel to pursue her business upon Erie and other Western lakes.
 

 The answer denies that'the supplies were furnished upon the credit of the boat; but, on the contrary, avers they were furnished on the credit of the master.
 

 The agreed facts in the case admit that there was no representation of the necessity of the supplies, other than that they were directed by the master at the times when furnished, and that the libellant knew, at these several times, that Appleby, the master, was the sole owner of the Sultana; that he usually navigated the boat, as master, and was present when the supplies were furnished. When not present, they were furnished at the request of the person in command.
 

 Although it does not distinctly appear in the ease, yet it is fairly to be inferred, that this vessel was engaged in making regular trips upon the Western lakes, in the business of carrying passengers and freight, and procured her supplies of coal at places of convenient distance, according to her necessities, by a previous understanding with the parties furnishing the article. The bill rendered by the libellant contains a running aceotmt of debit and credit, through a period of nearly two years.
 

 • There is no great doubt in the case, but that the article was necessary for the navigation of the vessel at the times when furnished, though the proof is very loose and indefinite.
 

 It seems to have been taken for granted, that a supply of
 
 *361
 
 coal was essential to the propelling of a steamboat, and, in a general sense, this is doubtless true; hut then, to make out a necessity within the admiralty rule, the supply must he really or apparently necessary at the time when it is furnished. But. the more serious difficulty in the case, on the part of the libel-lant, is the entire absence of any proof, to show that there was also a necessity, at the time of procuring the Supplies, for a credit upon the vessel. This proof is as essential as that of the necessity of the article itself. The vessel is-not subject to a lien for a common debt of the master or owner. It is only under very special circumstances; and in an unforeseen and unexpected emergency, that an implied maritime hypothecation - can be created. ít seems, also, to be supposed that circumstances of less pressing necessity, for 'supplies or repairs, and an implied hypothecation of the vessel to procure them, will satisfy the rule, -than in a ease of a necessity, sufficient to justify a loan of money on bottomry, for the like purpose. Ve think this a misapprehension..
 

 The only difference is, that before a bottomry bond can be given, an additional fact must appear, namely, that the master could not procure the money, without giving the extraordinary interest incident to that species of security. This distinction was" attempted in the-case of The Alexander, (1 Wm. Rob., 336,) hut was rejected by Dr. Lushington. A principle, also excluding any such distinction, has been laid down at this term, in the case of William Thomas and others
 
 v.
 
 J. W. Osborn.
 

 Now, the supplies having been furnished at a fixed place, according to the account current, and apparently under some general understanding and arrangement, the presumption is, that there could be 'no necessity for the implied hypothecation of the vessel — there could be no unexpected or unforeseen exigency to require it. For aught that appears, the supplies could have been procured on -the personal credit of the master, and in this case especially, as he was also the owner.
 

 We do not say that the mere fact of the master being owner, of itself, excludes the possibility of a case of necessity that would justify an implied hypothecation; hut it is undoubtedly a circumstance that should be attended to, in ascertaining whether any such necessity existed in the particular case. (1 Wm. Rob., 369, The Sophie.)
 

 These maritime liens, in the coasting business, and in the business upon the lakes and rivérs, are greatly increasing; and, as they are tacit and secret, are not to be encouraged, but should be strictly limited to the necessities of commerce which created them. Any relaxation of the law, in this respect, will
 
 *362
 
 tend to perplex and embarrass business, ratber tban fumisb facilities to carry it forward.
 

 After the fullest consideration, we think the decree below was erroneous, and should be reversed, and that the mortgagees are entitled to the proceeds in the registiy.
 

 This is the case of a foreign ship, the vessel belonging at Buffalo as her home port, and the debt contracted at Erie, in. the State of Pennsylvania. "We do not intend to express any opinion as to the necessity required to create liens upon vessels, under the local law of the States.
 

 Decree reversed, and proceeds ordered to be paid to the mortgagees.